## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREY VOROBYEV,** | : | |
| **As Admin. to the Estate of Ivan** | : | **Civil No. 3:20-CV-1384** |
| **Vorobyev, deceased,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **BLOOMSBURG UNIV. OF** | : | |
| **PENNSYLVANIA, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

### I.      Statement of Facts and of the Case

This case involves the tragic death of an eighteen-year-old college student, Ivan Vorobyev, who suffered cardiac arrest after complications from his Type 1 diabetes. At the time of his death, Ivan Vorobyev was a student enrolled at Bloomsburg University, a state institution of higher education.  The plaintiff, Andrey Vorobyev, is the father of Ivan Vorobyev and the administrator of his son's estate. Vorobyev has filed a complaint as the administrator of Ivan's estate, alleging violations of 42 U.S.C. § 1983 and related state law negligence claims against Bloomsburg University, the Commonwealth of Pennsylvania, CRNP Laura Wolfe,

and several unnamed defendants. Pending before the court is the defendants' motion to dismiss the plaintiff's complaint. (Doc. 7).

The plaintiff's federal civil rights claim, which is the sole basis for the assertion of federal jurisdiction in this case, rests upon the premise that the medical care received by Ivan Vorobyev was so deficient that it rose to the level of a state-created danger, violating Vorobyev's right to due process. While these events are doubtless tragic and may well give rise to state law negligence and malpractice claims, constrained as we are to follow the very narrow interpretation of definition of the state created danger doctrine adopted by the Court of Appeals, we will grant the motion to dismiss this claim without prejudice to litigation of any state law tort claims in state court.

The well-pleaded facts in the plaintiff's complaint, which we must accept as true for purposes of considering this motion to dismiss, are as follows:

Ivan Vorobyev, the plaintiff's son, was a student at Bloomsburg University in November of 2018. (Doc. 1, ¶ 5). Ivan suffered from Type 1 diabetes since childhood. (Id., ¶ 22). Prior to October 2018, Ivan had filled out a Health History Form, on which he indicated that he suffered from Type 1 diabetes since age ten. (Id., ¶ 24). On October 25, 2018, Ivan visited the Student Health Center on campus and was seen by RN Aukamp, who documented his past history of diabetes. (Id., ¶ 25). Ivan informed RN Aukamp that he was experiencing unstable blood sugars and

had been periodically missing class. (<u>Id.</u>) During this visit, Ivan gave RN Aukamp a letter signed by two of his medical providers—Dr. Tamborlane and Nurse Practitioner Weyman—which contained instructions regarding Ivan's diabetes management. (<u>Id.</u>, ¶ 26; Ex. A). This letter detailed Ivan's past complications with his diabetes and contained specific instructions for managing his diabetes in the college environment at Bloomsburg, which these medical providers opined posed additional challenges for Ivan. (<u>Id.</u>, ¶ 27; Ex. A). The letter also set forth signs and symptoms, including sustained high blood sugar levels, nausea, and vomiting, which, if left untreated, could lead to life-threatening diabetic ketoacidosis. (<u>Id.</u>; Ex. A).

About a month later, Ivan had scheduled an appointment at the Student Health Center on November 28, 2018 at 2:20p.m. (<u>Id.</u>, ¶ 29). Prior to this appointment, Ivan called the Student Health Center at approximately 12:04p.m. and left a message stating that he had been vomiting for several hours and wanted to speak with a nurse. (<u>Id.</u>, ¶ 29). RN Zalewski returned Ivan's call and documented his symptoms of high blood sugar, nausea, and vomiting, and told Ivan to bring his insurance card to his appointment in case he was sent to the emergency room. (<u>Id.</u>, ¶ 30).

At his scheduled appointment, Ivan was seen by CRNP Wolfe, who evaluated his symptoms. (<u>Id.</u>, ¶ 31). The complaint asserts that Wolfe knew of Ivan's Type 1 diabetes based on the health form he had filled out, the letter from his medical

providers, and the prior notations in his medical chart by RN Aukamp and RN Zalewski. (Id., ¶¶ 32-33). During this visit, Wolfe documented Ivan's high blood sugar levels, which measured 150mg/dL, and noted his nausea, vomiting, abdominal pain, dry mouth, and dizziness. (Id., ¶ 34). Ivan's glucose testing was then reported at 469mg/dL, whereas the normal reference range is 79 to 115 mg/dL. (Id., ¶ 35). Wolfe diagnosed Ivan with "nausea with vomiting, unspecified," prescribed him chewable bismuth tablets and diphenhydramine, and sent him back to his dorm. (Id., ¶ 36).

Ivan returned to his dorm, waited for his father to pick him up after his appointment, and went home with his father. (Id., ¶ 40). Upon his return home, his blood sugar had increased to approximately 600mg/dL. (Id., ¶ 41). Later that night, Ivan suffered cardiac arrest and was transferred by ambulance to Lehigh Valley Hospital – Pocono. (Id., ¶¶ 42-43). Ultimately, Ivan died at the hospital on November 29, 2018. (Id., ¶ 43). His cause of death was listed as cardiac arrest from hypovolemia, severe diabetic ketoacidosis, cerebral edema, and brain death. (Id.)

Thus, the plaintiff, as the administrator of Ivan's estate, filed the instant complaint on August 6, 2020. (Doc. 1). The complaint asserts claims under 42 U.S.C. § 1983, alleging a substantive due process claim under the Fourteenth Amendment against Bloomsburg, the Commonwealth, Wolfe, and several unnamed and unidentified defendants (Count I); a medical negligence claim against Wolfe

(Count II); *respondeat superior* liability against all defendants except Wolfe (Count III); corporate negligence against all defendants except Wolfe (Count IV); wrongful death against all defendants (Count V); and a survival action against all defendants (Count VI). Counts II through V of the complaint allege state law torts. Given that there appears to be no diversity of citizenship in this case, we should entertain these claims only if we find that Vorobyev's § 1983 state-created danger claim survives. Recognizing that this federal civil rights claim is the lynchpin for federal jurisdiction in this case, the defendants filed the instant motion to dismiss, arguing that the complaint fails to state a claim upon which relief can be granted. (Doc. 7).

On this score, the plaintiff concedes the § 1983 and state law claims against Bloomsburg and the Commonwealth, on the grounds that the claims against these defendants are barred by the Eleventh Amendment. For the same reasons, the plaintiff also concedes the § 1983 claim against Wolfe in her official capacity only. However, the plaintiff contends that Wolfe is liable under § 1983 in her individual capacity under the state-created danger doctrine, and that we should exercise supplemental jurisdiction over the state law claims against Wolfe.

This motion is fully briefed and is ripe for resolution. (Docs. 9, 10, 14). For the following reasons, given the highly exacting standards prescribed by the courts for state-created danger claims, we find that the § 1983 claim against Wolfe fails as a matter of law. Further, because we find that this federal claim fails, we will decline

to exercise supplemental jurisdiction over the plaintiff's state law claims. Accordingly, we will grant the defendants' motion to dismiss without prejudice to the pursuit of these state law tort claims in state court..

## II. **Discussion**

### A. **Motion to Dismiss – Standard of Review**

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather,

in conducting a review of the adequacy of a complaint, the Supreme Court has

advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain

more than mere legal labels and conclusions; it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief." In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the

plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is against these legal benchmarks that we consider the defendants' motion to dismiss.

**B. The Defendants' Motion to Dismiss Will Be Granted.**

Here, the plaintiff brings claims under § 1983 and related state law claims against the Commonwealth of Pennsylvania, Bloomsburg University, Defendant Wolfe, and several unidentified defendants, arguing that these entities and individuals are liable for Ivan's ultimate demise. As we have explained, the plaintiff

has conceded the claims against the Commonwealth, Bloomsburg University, and the § 1983 claim against Wolfe in her official capacity, as these claims are barred by the Eleventh Amendment. Accordingly, these claims will be dismissed.

With respect to the § 1983 claim against Wolfe in her individual capacity, the plaintiff alleges that, among other things, Wolfe's failure to diagnose Ivan with diabetic ketoacidosis and to contact emergency medical services constitutes a state-created danger, a recognized substantive due process claim. In essence, the plaintiff alleges that Wolfe's inaction regarding Ivan's medical needs rendered him more vulnerable to danger and increased his risk of harm. Specifically, the plaintiff contends that Wolfe incorrectly diagnosed Ivan with nausea and vomiting; failed to provide a differential diagnosis consistent with his signs of diabetes complications; failed to conform to applicable standards of care of a CRNP; failed to recognize Ivan's symptoms; failed to send or refer Ivan to emergency services or a specialist; delayed Ivan's treatment by a specialist; improperly assessed Ivan's medical condition; and failed to timely and properly make observations regarding Ivan's condition. (Doc. 1, ¶¶ 60(a)-(l)).

An important starting point for this kind of substantive due process analysis is recognition that the Supreme Court has found that the Due Process Clause "d[oes] not impose an affirmative obligation on the state to protect its citizens[.]" Bright v.

<u>Westmoreland County</u>, 443 F.3d 276, 280 (3d Cir. 2006). On this score, the Supreme

Court has stated:

> The Clause is phrased as a limitation on the State's power to act, not as
> a guarantee of certain minimal levels of safety and security. It forbids
> the State itself to deprive individuals of life, liberty, or property without
> "due process of law," but its language cannot fairly be extended to
> impose an affirmative obligation on the State to ensure that those
> interests do not come to harm through other means. Nor does history
> support such an expansive reading of the constitutional text.

<u>DeShaney v. Winnebago County Dep't of Social Services</u>, 489 U.S. 189, 195 (U.S.

1989). As such, the minimal "affirmative duty to protect arises not from the State's

knowledge of the individual's predicament or from its expressions of intent to help

him, but from the limitation which it has imposed on his freedom to act on his own

behalf." <u>Bright</u>, 443 F.3d at 280-81 (quoting <u>DeShaney</u>, 489 U.S. at 199-200). In

other words, "<u>DeShaney</u> stands for the proposition that the Due Process Clause

imposes no affirmative duty to protect a citizen who is not in state custody." <u>Bright</u>,

443 F.3d at 281.

However, <u>DeShaney</u> does not preclude the existence of constitutional

violations where "state authority is affirmatively employed in a manner that injures

a citizen or renders him 'more vulnerable to injury from another source than he or

she would have been in the absence of state intervention.' " <u>Bright</u>, 443 F.3d at 281

(quoting <u>Schieber v. City of Philadelphia</u>, 320 F.3d 409, 416 (3d Cir. 2003)). The

Third Circuit has accordingly recognized, but narrowly construed, the state-created

danger doctrine as a carefully crafted and specifically defined exception to DeShaney's scope. The four "essential elements" of the doctrine follow: (1) the harm ultimately realized must have been foreseeable and fairly direct; (2) a state actor must have acted with a degree of culpability that shocks the conscience; (3) there must have been a relationship between the state actor and the plaintiff such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions; and (4) a state actor must have affirmatively used his or her authority in a way that created a danger to the citizen or caused the citizen to be more vulnerable to danger than had the state not acted at all. Id.

Initially, for harm to be foreseeable, the Third Circuit has required that a plaintiff must allege "an awareness of risk that is sufficiently concrete to put the [state] actors on notice of the harm." However, it is not enough for the harm to just be foreseeable—it must also be fairly direct, or sufficiently close in time to the defendant's actions and not separated by intervening forces and actions. In other words, the harm cannot be "too attenuated." Dorley v. S. Fayette Twp. Sch. Dist., 129 F. Supp. 3d 220, 233 (W.D. Pa. 2015). "[I]t is insufficient to plead that state officials' actions took place somewhere along the causal chain that ultimately led to the plaintiff's harm." D.M. v. Phila. Hous. Auth., 613 Fed. Appx. 187, 190 (3d Cir. 2015).

Further, while perhaps the most "elusive" element, as coined by the Third Circuit, the second element of the state created danger doctrine—whether the conduct shocks the conscience—turns on the circumstances given in a particular case. Estate of Smith v. Marasco, 430 F.3d 140, 153 (3d Cir. 2005). The Third Circuit has stated that where an actor has the "luxury of proceeding in a deliberate fashion[,]" the conscience is usually only "shocked" upon a showing that the actor deliberately harmed the victim. Id. This could be demonstrated by showing that the actor was deliberately indifferent in "consciously disregard[ing] a substantial risk of serious harm" or ignoring a patently obvious risk that the actor should have been aware of. Keener v. Hribal, 351 F. Supp. 3d 956, 972 (W.D. Pa. 2018). The danger must have been foreseeable to the actor, and the actions that followed must have evinced a willingness to ignore that risk.

In this regard, it is apparent that "[m]ere negligence is not enough to shock the conscience." Sanford v. Stiles, 456 F.3d 298, 311 (3d Cir. 2006). Therefore, in a medical context, the question is not whether a state actor should have recognized the need to take further action to address an individual's physical or emotional distress. Rather the issue is whether the state actor displayed a conscience-shocking level of deliberate indifference to a medical or emotional concerns. Id. Thus, when a state-actor, medical professional erroneously assures a patient that he has nothing to worry about, it has been held that the doctor's conduct, while perhaps negligent, does not

rise to the level of a conscience shocking affirmative cat which gives rise to liability under the state-created danger doctrine. <u>Ye v. United States</u>, 484 F.3d 634, 642 (3d Cir. 2007). Likewise the failure of a counselor to recognize the suicide risk presented by another, standing alone, does not constitute conscience-shocking conduct triggering the state created danger doctrine. <u>Sanford</u>, 456 F.3d at 311.

Third, the "relationship" requirement necessitates contact between the actor and the plaintiff such that the plaintiff could be classed as a foreseeable victim in tort. <u>Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.</u>, 318 F.3d 473, 479 (3d Cir. 2003). The plaintiff need not be in the actor's custody to maintain an action under the state-created danger doctrine.

Lastly, and most critically in this case, is the requirement that a defendant engage in affirmative conduct to cause the alleged danger, since "[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger." <u>D.R. by L.R. v. Middle Bucks Area Vo. Tech. Sch.</u>, 972 F.2d 1364, 1374 (3d Cir. 1992) (en banc); <u>see also</u> <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1100-01 (3d Cir. 1990) (explaining "that a state's failure to take affirmative action to protect a victim from the actions of a third party will not, in the absence of a custodial relationship . . . support a civil rights claim"). The fourth element of a state-created danger claim thus "asks whether a defendant exercised his or her authority *to create a foreseeably dangerous*

*situation*." Kaucher v. County of Bucks, 455 F.3d 418, 432 (3d Cir. 2006) (emphasis added). In other words, "[t]here must be a direct causal relationship between the affirmative act of the state and plaintiff's harm." Id. The state's action should be the "but for" cause of the danger faced by the plaintiff. Id. "It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." Bright, 443 F.3d at 282.

Although the distinction between action and inaction may not always be clear, the Third Circuit Court of Appeals has "never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised in some fashion." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008). Rather, the Court has held that merely refraining from acting or "exercis[ing] state authority [is] not a violation of the Due Process Clause . . . ." Bright, 443 F.3d at 285; see also Tittensor v. County of Montgomery, No. 02-8011, 2003 WL 22358450, at *2-3 (E.D. Pa. Sept. 8, 2003) (holding that the county government and health department did not create the harm when they knew of an E. coli outbreak at a private farm but did not warn patrons or otherwise act and the plaintiff's children subsequently became infected). On this score, it has been held that an misdiagnosis and mistreatment of a medical condition which led to an erroneous assurance that the patient would be fine, did not meet the affirmative action threshold required for the state created danger doctrine. Ye, 484 F.3d at 642.

In the instant case, the plaintiff relies on <u>Kneipp v. Tedder</u>, 95 F.3d 1199 (3d Cir. 1996), arguing that Wolfe's inactions constituted an affirmative act that rendered Ivan more vulnerable to harm. In <u>Kneipp</u>, the Third Circuit held that police officers used their authority to create a dangerous situation when the officers stopped an intoxicated couple, allowed the husband to proceed home while detaining the wife, and then sent the wife to walk home alone in the cold, after which she was found dead at the bottom of an embankment. <u>Id.</u> at 1209. The Court reasoned that the officers placed the woman in a worse position by allowing her husband to go home, who conceivably would have escorted her some safely. <u>Id.</u> In a subsequent case, the Court explained that the affirmative act of the officers in <u>Kneipp</u> was the choice "to displace the caretaker of someone who was clearly unable to care for herself." <u>L.R.</u>, 836 F.3d at 244; <u>see also</u> <u>Johnson v. City of Phila.</u>, 975 F.3d 394, 309 (3d Cir. 2020) (explaining that in <u>Kneipp</u>, "[t]he danger . . . was not the plaintiff's intoxicated journey from tavern to domicile. Rather it was the 'stated-created danger' of removing her male companion, who presumably would have sheltered her from peril, that violated the guarantee of due process . . .") (citations omitted).

In the instant case, we cannot conclude that CRNP Wolfe acted affirmatively in a conscious-shocking fashion to create a dangerous situation for Ivan or render him more vulnerable to danger. The complaint lists several actions that Wolfe allegedly *failed to take*, rather than any affirmative conduct by Wolfe regarding

Ivan's medical care. On this score, as we have noted, the complaint alleges that Wolfe incorrectly diagnosed Ivan with nausea and vomiting; failed to provide a differential diagnosis consistent with his signs of diabetes complications; failed to conform to applicable standards of care of a CRNP; failed to recognize Ivan's symptoms; failed to send or refer Ivan to emergency services or a specialist; delayed Ivan's treatment by a specialist; improperly assessed Ivan's medical condition; and failed to timely and properly make observations regarding Ivan's condition. (Doc. 1, ¶¶ 60(a)-(l)). If a false assurance by a doctor that a patient is well is insufficient to constitute an affirmative act, Ye, 484 F.3d at 642, it follows that a failure to act, while perhaps negligent, will not satisfy this element of the state created danger doctrine.

Thus, the plaintiff's state-created danger claim is based on Wolfe's inaction, rather than any affirmative conduct by Wolfe to create a dangerous situation for Ivan or render him more vulnerable to danger. This is simply not enough to meet the fourth element of a state-created danger claim under § 1983. See e.g., Gayemen v. Sch. Dist. of City of Allentown, 712 F. App'x 218 (3d Cir. 2017) (failure to protect students from gang-related violence at school did not amount to a state-created danger); B.W. v. Career Tech. Center of Lackawanna Cnty., 422 F.Supp.3d 859, 899 (M.D. Pa. 2019) ("Despite the plaintiffs' allegations [of the defendant's failure to act to stop abuse of students], the Third Circuit has consistently found that 'failures

to act cannot form the basis of a valid § 1983 [state-created danger] claim'")
(citations omitted); <u>Lansberry v. Altoona Area Sch. Dist.</u>, 318 F.Supp.3d 739 (W.D.
Pa. 2018) (failure to intervene and stop bullying did not constitute an affirmative
action for a state-created danger claim); <u>Bridges ex rel. D.B. v. Scranton Sch. Dist.</u>,
66 F.Supp.3d 570 (M.D. Pa. 2014) (allegation of failing to train school principal
regarding school bullying did not constitute an affirmative act for a state-created
danger claim).

Further, to the extent that the plaintiff's allegations sound in negligence,
"[m]ere negligence is not enough to shock the conscience." <u>Sanford</u>, 456 F.3d at
311. Therefore, in a medical context in assessing a state created danger claim, the
controlling question is not whether a state actor should have recognized the need to
take further action but whether the state actor displayed a conscience-shocking level
of deliberate indifference to a medical or emotional concerns. <u>Id.</u>

Here we cannot say that the well-pleaded facts disclose deliberate indifference
to Ivan Vorobyev's medical needs. Rather, the complaint, at most, alleges that
Wolfe was highly negligent in the face of an existing medical problem that was
allowed to worsen through inaction. That simply is not enough under Third Circuit
precedent to support a cognizable claim under the state-created danger doctrine.
Accordingly, this claim fails as a matter of law and will be dismissed.

Finally, Vorobyev has asserted various state law claims against Wolfe. We note that the proposed disposition of the plaintiff's federal legal claims, in turn, suggests the appropriate course for the court to follow in addressing any ancillary state law claims that the plaintiff may wish to pursue against this defendant. In a case such as this, where the jurisdiction of the federal court was premised on alleged federal claims which are found to be subject to dismissal, the proper course generally is for "the court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims)." Bronson v. White, No. 05-2150, 2007 WL 3033865, *13 (M.D. Pa. Oct. 15, 2007) (Caputo, J.) (adopting report and recommendation dismissing ancillary malpractice claim against dentist); see Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008) (citing United Mine Workers, 383 U.S. at 726 and Tully v. Mott Supermkts., Inc., 540 F.2d 187, 196 (3d Cir. 1976).) ("Because the District Court appropriately dismissed [the inmate's] Bivens claims, no independent basis for federal jurisdiction remains"). As the Supreme Court has aptly observed:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for

them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers, 383 U.S. at 726 (footnotes omitted).

Here, we have found that Vorobyev's federal claims are subject to dismissal at the outset of this litigation. Therefore, in the exercise of our discretion in this district, we should decline to assert supplemental jurisdiction over potential ancillary state law claims in this case where all potential federal claims brought before us failed as a matter of law. Accordingly, these pendent state law claims will be dismissed without prejudice.

### III.  <u>Conclusion</u>

For the foregoing reasons, the defendants' motion to dismiss (Doc. 7) will be GRANTED, and the plaintiff's complaint will be dismissed.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge