IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREY VOROBYEV, as Admin to the | : | Civil No. 3:20-CV-01384 |
| Estate of Ivan Vorobyev, deceased | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LAURA WOLFE, MSN, CRNP | : | (Magistrate Judge Carlson) |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

## I.  Introduction

This case involves the tragic death of an eighteen-year-old college student, Ivan Vorobyev, who suffered cardiac arrest after complications from his Type 1 diabetes. At the time of his death, Ivan Vorobyev was a student enrolled at Bloomsburg University, a state institution of higher education. The plaintiff, Andrey Vorobyev, is the father of Ivan Vorobyev and the administrator of his son's estate. Andrey Vorobyev filed a complaint as the administrator of Ivan's estate, alleging violations of 42 U.S.C. § 1983 and related state law negligence claims against Bloomsburg University, the Commonwealth of Pennsylvania, CRNP Laura Wolfe, and several unnamed defendants. The plaintiff has conceded that all of his claims except for the claims against Wolfe in her individual capacity are barred by the Eleventh Amendment.

In Vorobyev v. Bloomsburg Univ. of Pennsylvania (Vorobyev I), 541 F. Supp. 3d 524 (M.D. Pa. 2021), vacated and remanded, 2022 WL 1499278 (3d Cir. 2022), we dismissed the plaintiff's state-created danger claim under § 1983 against Wolfe. On appeal, the Third Circuit vacated our order reasoning that we should have granted leave to the plaintiff to amend his complaint and engaged in a futility analysis of this counselled complaint. Vorobyev v. Bloomsburg Univ. of Pennsylvania (Vorobyev II), 2022 WL 1499278, at *3 (3d Cir. 2022). The Third Circuit remanded the case to allow the plaintiff to amend his complaint, unless we determine such amendment would be futile. Id. Pending before the court is the plaintiff's motion to amend his complaint. (Doc. 35).

The plaintiff's federal civil rights claim, which is the sole basis for the assertion of federal jurisdiction in this case, rests upon the premise that the medical care received by Ivan Vorobyev was so deficient that it rose to the level of a state-created danger, violating his right to due process. While these events are doubtless tragic and may well give rise to state law negligence and malpractice claims, constrained as we are to follow the very narrow interpretation of the definition of the state-created danger doctrine adopted by the Third Circuit, we will deny the plaintiff's motion to amend his complaint because we find such amendment would be futile.

2

II.    **Statement of Facts and of the Case**

The following facts are taken from the plaintiff's proposed amended complaint.[1] We must accept these facts as true for purposes of considering the plaintiff's motion to amend.

Ivan Vorobyev, the plaintiff's son, was a student at Bloomsburg University in November of 2018. (Doc. 36, ¶¶ 5-6). Ivan suffered from Type 1 diabetes since childhood. (Id., ¶ 22). Prior to October 2018, Ivan had filled out a Health History Form, on which he indicated that he suffered from Type 1 diabetes since age ten. (Id., ¶ 24). On October 25, 2018, Ivan visited the Student Health Center on campus and was seen by RN Aukamp, who documented his past history of diabetes. (Id., ¶ 25). Ivan informed RN Aukamp that he was experiencing unstable blood sugars and had been periodically missing class. (Id.) During this visit, Ivan gave RN Aukamp a letter signed by two of his medical providers—Dr. Tamborlane and Nurse Practitioner Weyman—which contained instructions regarding Ivan's diabetes management. (Id., ¶ 26; Ex. A). This letter detailed Ivan's past complications with his diabetes and contained specific instructions for managing his diabetes in the college environment at Bloomsburg, which these medical providers opined posed additional challenges for Ivan. (Id., ¶ 27; Ex. A). The letter clearly stated: "Sustained

---

[1] The factual allegations in the plaintiff's proposed amended complaint (Doc. 36) are substantially similar to those in his original complaint (Doc. 1) with some specific exceptions, which are noted in our recount of the facts.

high blood sugar levels may affect concentration and if untreated, can lead to nausea and vomiting and more serious complications such as ketosis and, if left untreated, life-threatening diabetic ketoacidosis (DKA)." (Id., ¶ 18; Ex. A).

About a month later, Ivan had scheduled an appointment at the Student Health Center on November 28, 2018 at 2:20p.m. (Id., ¶ 29). Prior to this appointment, Ivan called the Student Health Center at approximately 12:04 p.m. and left a message stating that he had been vomiting for several hours and wanted to speak with a nurse. (Id., ¶ 29). RN Zalewski returned Ivan's call and documented his symptoms of high blood sugar, nausea, and vomiting, and told Ivan to bring his insurance card to his appointment in case he was sent to the emergency room. (Id., ¶ 30).

At his scheduled appointment, Ivan was seen by CRNP Wolfe, who evaluated his symptoms. (Id., ¶ 31). The plaintiff asserts that Wolfe knew of Ivan's Type 1 diabetes based on the health form he had filled out, the letter from his medical providers, and the prior notations in his medical chart by RN Aukamp and RN Zalewski. (Id., ¶¶ 32-33). During this visit, Wolfe documented Ivan's high blood sugar levels, which measured 150mg/dL, and noted his nausea, vomiting, abdominal pain, dry mouth, and dizziness. (Id., ¶ 34). Ivan's glucose testing was then reported at 469mg/dL, whereas the normal reference range is 79 to 115mg/dL. (Id., ¶ 35).

According to the plaintiff, Wolfe "affirmatively misdiagnosed Decedent with a differential diagnosis inconsistent with the clear and obvious acute complications

of type 1 diabetes suffered by Ivan Vorobyev." (Id., ¶ 28). Wolfe diagnosed Ivan with "nausea with vomiting, unspecified." (Id., ¶ 29). It is alleged that Wolfe also inappropriately prescribed to Ivan chewable bismuth tablets and Diphenyhydramine. (Id.) The plaintiff alleges that Wolfe's misdiagnosis and inappropriate prescription of relatively minor medicines "undercut and rendered hollow [Wolfe's] question to Decedent whether he wanted to go to an emergency department." (Id., ¶ 42). Further the plaintiff asserts that Ivan's decision not to go to an emergency department "was not [a] knowing, voluntary or intelligent medical decision" because it was based on Wolfe's misdiagnosis and inappropriate prescription of medicine. (Id., ¶ 43).

More specifically the plaintiff alleges the following:

Defendant Wolfe acted in a willful disregard of the safety of Ivan Vorobyev when she: . . .

(l)   Prescribed the wrong medication for Ivan Vorobyev;

(m)   Declined to keep Ivan Vorobyev in the Student Health Center for observation until his father arrived;

(n)   Declined to refer Ivan Vorobyev to a specialist;

(o)   Declined to order that Ivan Vorobyev be taken to an emergency department;

(p)   Misled Ivan Vorobyev about the seriousness of his symptoms;

(q)   Relied upon Ivan Vorobyev, an 18 year old who was not a medical professional to make the decision that a medical professional should make about whether or not to send the patient to an emergency department;

(r)   Sent Ivan Vorobyev to his dormitory where he would not be monitored or cared for by a medical professional;

(s)   Deprived Ivan Vorobyev of his liberty to go to an emergency department by misleading him about the seriousness of his symptoms and by sending him to his dormitory;

(Id., ¶ 60(l)-(s)). After Wolf released Ivan to his dorm, Ivan waited in is dorm for his father to pick him up and went home with his father. (Id., ¶ 40). Upon his return home, his blood sugar had increased to approximately 600mg/dL. (Id., ¶ 41). Later that night, Ivan suffered cardiac arrest and was transferred by ambulance to Lehigh Valley Hospital – Pocono. (Id., ¶¶ 42-43). Ultimately, Ivan died at the hospital on November 29, 2018. (Id., ¶ 43). His cause of death was listed as cardiac arrest from hypovolemia, severe diabetic ketoacidosis, cerebral edema, and brain death. (Id.)

The plaintiff, as the administrator of Ivan's estate, filed the original complaint on August 6, 2020. (Doc. 1). The original complaint asserted claims under 42 U.S.C. § 1983, alleging a substantive due process claim under the Fourteenth Amendment against Bloomsburg, the Commonwealth, Wolfe, and several unnamed and unidentified defendants (Count I); a medical negligence claim against Wolfe (Count II); *respondeat superior* liability against all defendants except Wolfe (Count III); corporate negligence against all defendants except Wolfe (Count IV); wrongful death against all defendants (Count V); and a survival action against all defendants (Count VI). Counts II through V of the original complaint alleged state law torts. Recognizing that the federal civil rights claim is the lynchpin for federal jurisdiction in this case, the defendants filed a motion to dismiss, arguing that the complaint fails to state a claim upon which relief can be granted. (Doc. 7).

On this score, the plaintiff conceded the § 1983 and state law claims against Bloomsburg and the Commonwealth on the grounds that the claims against these defendants are barred by the Eleventh Amendment. For the same reasons, the plaintiff also conceded the § 1983 claim against Wolfe in her official capacity only. However, the plaintiff contends that Wolfe is liable under § 1983 in her individual capacity under the state-created danger doctrine, and that we should exercise supplemental jurisdiction over the state law claims against Wolfe.

We granted the defendants' motion to dismiss. Vorobyev I, 541 F. Supp. 3d 524 (M.D. Pa. 2021), vacated and remanded, 2022 WL 1499278. On appeal, the United States Court of Appeals for the Third Circuit vacated and remanded the case Vorobyev II, 2022 WL 1499278 (3d Cir. 2022), holding that while the plaintiff's complaint did not sufficiently allege facts to support a state-created danger claim, we did not grant leave to the plaintiff to amend his complaint and should have engaged in a futility analysis. Id. The Third Circuit remanded the case to allow the plaintiff to amend his complaint, unless we determine such amendment would be futile. Id.

Following this remand, on May 12, 2022, we entered an order directing the plaintiff to file a motion to amend his complaint and submit a proposed amended complaint. (Doc. 32). On June 23, 2022, the plaintiff filed a motion to amend his complaint accompanied by a proposed amended complaint. (Docs. 35-36). The

proposed amended complaint asserts the following claims against Wolfe in her individual capacity: substantive due process under 42 U.S.C. § 1983 (Count I); medical negligence (Count II); wrongful death (Count III); and a survival action claim (Count VI). (Doc. 36). The motion to amend has been briefed and is ripe for resolution.

Our review of the proposed amended complaint leads us to conclude that amendment of the plaintiff's state-created danger claim is futile. We cannot conclude from the allegations in the amended complaint that Wolfe deprived Ivan of his liberty in such a way to satisfy the fourth element required to invoke the state-created danger doctrine—a state actor must have affirmatively used his or her authority in a way that created a danger to the citizen or caused the citizen to be more vulnerable to danger than had the state not acted at all. Moreover, we find that the law was not clearly established at the time of Wolfe's alleged violative act; therefore, Wolfe is shielded by the doctrine of qualified immunity. Accordingly, we will deny the plaintiff's motion to amend.

**III.   Discussion**

    **A.   Motion to Amend and Supplement Complaints – Standard of Review**

Rule 15 of the Federal Rules of Civil Procedure governs amendments and supplementation of pleadings. Fed. R. Civ. P. 15. Rule 15(a) authorizes a party to amend his pleading once as a matter of course within 21 days after serving it, or if

the pleading is one to which a responsive pleading is required, 21 days after service of the responsive pleading, or 21 days after service of a dispositive motion under Rule 12, whichever is earlier. Fed. R. Civ. P. 15(a)(1)(A) and (B). "In all other cases, a party may amend its pleading only with the opposing party's written consent, or the court's leave," which courts are to freely give "when justice so requires." Fed. R. Civ. P. 15(a)(2). Consistent with this policy, leave to amend rests in the discretion of the court and may, when justice so requires, be denied if the court finds "undue delay, bad faith or dilatory motive on the part of the movant, failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Oran v. Stafford, 226 F.3d 275, 291 (3d Cir. 2000).

"The decision of whether to permit a supplemental pleading is within this Court's discretion." Hassoun v. Cimmino, 126 F.Supp.2d 353, 360-361 (D.N.J. 2000) (citing Owens Illinois, Inc. v. Lake Shore Land Co., 610 F.2d 1185, 1188–89 (3d Cir. 1979); Burns v. Exxon Corp., 158 F.3d 336, 344 (5th Cir. 1998)). Therefore, decisions regarding motions to amend or supplement pleadings rest in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. See e.g., Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n., 252 F.3d 267 (3d Cir. 2001).

That discretion, however, is governed by certain basic principles, principles that are embodied in Rule 15 of the Federal Rules of Civil Procedure. In this regard, while Rule 15 provides that leave to amend should be freely given when justice so requires, the district court still retains broad discretion to deny a motion to amend, Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n., 252 F.3d 267 (3d Cir. 2001), and may deny a request:

> [I]f the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party. Adams, 739 F.2d at 864. Delay becomes "undue," and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend. Cureton, 252 F.3d at 273 (citing Adams, 739 F.2d at 868; Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993)). Thus, our review of the question of undue delay ... will "focus on the movant's reasons for not amending sooner," Cureton, 252 F.3d at 273, and we will balance these reasons against the burden of delay on the District Court. Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir. 1988).

Bjorgung v. Whitetail Resort, LP, supra, 550 F.3d at 266.

> Furthermore,

> "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) ("Burlington"); Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir. 1993). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Burlington, 114 F.3d at 1434.

Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). Moreover, a party seeking to supplement pleadings must act in a diligent fashion. Thus, for example, "[a] District

Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them." Krantz v. Prudential Investments Fund Management LLC, 305 F.3d 140, 144 (3d Cir. 2002) (citing Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654 (3d Cir. 1998)).

Because " '[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted" Shane, 213 F.3d at 115, it is necessary to consider the legal tenants that guide a court when reviewing a motion to dismiss.

### B.    Motion to Dismiss – Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more

> heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal,

556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's

entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting

Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Judged by these benchmarks, we will deny the plaintiff's motion to file an amended complaint, as allowing the complaint to be amended would be a futile exercise. In our view, given the limited reading of the state created danger doctrine

endorsed by the court of appeals, the plaintiff has not sufficiently alleged that Wolfe committed an affirmative act that deprived Ivan Vorobyev of his liberty to trigger this constitutional claim. Moreover, even if the amended complaint sufficiently alleged an affirmative act by Wolfe, she is shielded from constitutional tort liability by the doctrine of qualified immunity. Thus, the plaintiff cannot state a substantive due process claim for which relief can be granted. Of course, this does not mean that the plaintiff is entirely without legal recourse here. Quite the contrary, the plaintiff may still maintain state law tort claims against any allegedly negligent parties.

### C.   The Plaintiff's Motion to Amend Will Be Denied.

#### 1.   The Well-Pleaded Facts Do Not Satisfy the State-Created Danger Doctrine.

The plaintiff contends that Wolfe "violated Ivan Vorobyev's substantive due process right to bodily integrity, which is secured by the Fourteenth Amendment to the Constitution of the United States." (Doc. 36, ¶ 56). An important starting point for this kind of substantive due process analysis is recognition that the Supreme Court has found that the Due Process Clause "d[oes] not impose an affirmative obligation on the state to protect its citizens[.]" Bright v. Westmoreland Cty, 443 F.3d 276, 280 (3d Cir. 2006). On this score, the Supreme Court has stated:

> The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those

interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text.

DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L. Ed. 2d 249 (U.S. 1989). As such, the minimal "affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." Bright, 443 F.3d at 280-81 (quoting DeShaney, 489 U.S. at 199-200, 109 S.Ct. 998). In other words, "DeShaney stands for the proposition that the Due Process Clause imposes no affirmative duty to protect a citizen who is not in state custody." Bright, 443 F.3d at 281.

However, DeShaney does not preclude the existence of constitutional violations where "state authority is affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention.' " Bright, 443 F.3d at 281 (quoting Schieber v. City of Philadelphia, 320 F.3d 409, 416 (3d Cir. 2003)). The Third Circuit has accordingly recognized, but narrowly construed, the state-created danger doctrine as a carefully crafted and specifically defined exception to DeShaney's scope. Construed in this narrow fashion the four "essential elements" of the doctrine are as follows: (1) the harm ultimately realized must have been foreseeable and fairly direct; (2) a state actor must have acted with a degree of culpability that shocks the conscience; (3) there must have been a relationship

17

between the state actor and the plaintiff such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions; and (4) a state actor must have affirmatively used his or her authority in a way that created a danger to the citizen or caused the citizen to be more vulnerable to danger than had the state not acted at all. Id.

As the parties focus their attention only on the fourth element of this claim, our analysis will similarly focus on the fourth element. Our analysis of the first three elements remains the same as in our prior decision; notably, that the second element is not satisfied because " '[m]ere negligence is not enough to shock the conscience' . . . . [and h]ere we cannot say that the well-pleaded facts disclose deliberate indifference to Ivan Vorobyev's medical needs." Vorobyev, 541 F. Supp. 3d at 535 (quoting Sanford v. Stiles, 456 F.3d 298, 311 (3d Cir. 2006)). Therefore in accordance with settled case law it remains essential that the plaintiff alleged something beyond negligence to assert a constitutional state created danger claim.

The fourth and most critical element is the requirement that a defendant engage in affirmative conduct to cause the alleged danger, since "[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger." D.R. by L.R. v. Middle Bucks Area Vo. Tech. Sch., 972 F.2d 1364, 1374 (3d Cir. 1992) (en banc);

18

see also Brown v. Grabowski, 922 F.2d 1097, 1100-01 (3d Cir. 1990) (explaining "that a state's failure to take affirmative action to protect a victim from the actions of a third party will not, in the absence of a custodial relationship ... support a civil rights claim"). "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—*through incarceration, institutionalization, or other similar restraint of personal liberty— which is the 'deprivation of liberty' triggering the protections of the Due Process Clause*, not its failure to act to protect his liberty interests against harms inflicted by other means." DeShaney, 489 U.S. at 200, 109 S.Ct. 998 (emphasis added).

The fourth element of a state-created danger claim thus "asks whether a defendant exercised his or her authority to create a foreseeably dangerous situation." Kaucher v. Cty. of Bucks, 455 F.3d 418, 432 (3d Cir. 2006). In other words, "[t]here must be a direct causal relationship between the affirmative act of the state and plaintiff's harm." Id. The state's action should be the "but for" cause of the danger faced by the plaintiff. Id. "It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." Bright, 443 F.3d at 282. Given these exacting and well-settled legal benchmarks, we are constrained to deny the plaintiff's motion to amend his complaint because the amendment will be futile; the facts cannot be pled in such a way to amount to an affirmative act by Wolfe that deprived Ivan of his liberty.

The defendant urges us to deny leave to amend, arguing that the amended complaint fails for the same reasons as the original complaint since the amended complaint "does not allege any new facts with respect to Wolfe's conduct; rather, it simply reframes the same facts from the opposite perspective." (Doc. 37, at 6). In response to this assertion, the plaintiff claims that "[w]hether or not there is reframing is not the relevant question. The relevant question is whether or not the facts as alleged satisfy Judge Rendell's concurrence and are affirmative acts that satisfy the fourth requirement of the state-created danger theory." (Doc. 38, at 4). Judge Rendell did "not view the facts alleged as so clearly lacking such that they fail to establish prima facie element of an 'affirmative act.' " Vorobyev II, 2022 WL 1499287 at *3 (3d Cir. 2022) (Rendell, J., concurring).[2]

Judge Rendell in her concurrence distinguished Ye v. United States, 484 F.3d 634 (3d Cir. 2007) from the instant case. We relied on Ye to dismiss the plaintiff's

---

[2] Elaborating on this assertion, Judge Rendell enumerates the facts in such a manner she believes would amount to a deprivation of liberty:

> Could the District Court on remand conclude that prescribing her patient the wrong medication, refusing to refer him to a specialist, declining to keep him for observation until his father arrived, and sending him to his dormitory where he would not be monitored or cared for by a medical professional, constituted one or more "affirmative acts" that made him "more vulnerable to danger" and, thereby, deprived him of liberty? Ye, 484 F.3d at 638 (citing Bright v. Westmoreland Cty., 443 F.3d 276 (3d Cir. 2006)). I think so.

Vorobyev II, 2022 WL 1499287, at *4.

original complaint, and the majority agreed that Ye did not support a finding that the fourth element of the state-created danger doctrine was met. Indeed, in our prior opinion we stated that: "If a false assurance by a doctor that a patient is well is insufficient to constitute an affirmative act, Ye, 484 F.3d at 642, it follows that a failure to act, while perhaps negligent, will not satisfy this element of the state created danger doctrine." Vorobyev I, 541 F. Supp. At 534. The majority agreed, reasoning that "[i]f an affirmative assurance of well-being cannot constitute a deprivation, then misdiagnosis—the conduct at issue here—cannot either." Vorobyev II, 2022 WL 1499278 at *2.

The plaintiff in his amended complaint does not allege additional well-pleaded facts describing some affirmative actions by the defendant. Instead, the plaintiff simply mirrors the verbiage used by Judge Rendell in her concurring opinion in an attempt to satisfy the affirmative act requirement of the state-created danger doctrine. On this score, the plaintiff alleges that:

> Defendant Wolfe acted in a willful disregard of the safety of Ivan Vorobyev when she: . . .
> (l)    Prescribed the wrong medication for Ivan Vorobyev;
> (m)   Declined to keep Ivan Vorobyev in the Student Health Center for observation until his father arrived;
> (n)    Declined to refer Ivan Vorobyev to a specialist;
> (o)    Declined to order that Ivan Vorobyev be taken to an emergency department;
> (p)    Misled Ivan Vorobyev about the seriousness of his symptoms;
> (q)    Relied upon Ivan Vorobyev, an 18 year old who was not a medical professional to make the decision that a medical

> professional should make about whether or not to send the patient
> to an emergency department;
>
> (r)      Sent Ivan Vorobyev to his dormitory where he would not be
> monitored or cared for by a medical professional;
>
> (s)      Deprived Ivan Vorobyev of his liberty to go to an emergency
> department by misleading him about the seriousness of his symptoms
> and by sending him to his dormitory;

(Doc. 36, ¶ 60(l)-(s)).

However, we conclude that this mere change in verbiage in an effort to create the appearance of an affirmative act is insufficient. We do not find it necessary to delve into the nuances of a mere assurance versus a misdiagnosis, because even viewing the factual allegations as a misdiagnosis by Wolfe, we do not find that Ivan Vorobyev was deprived of his liberty. Wolfe did not take away Ivan Vorobyev's ability to exercise his will and make the decision to seek other medical assistance.

It is well established that a " 'deprivation of liberty' is a bedrock requirement of state liability under the substantive due process clause." Ye v. United States, 484 F.3d at 641. As the court in Ye found that a mere assurance is not "an affirmative act—a 'restraint of personal liberty' similar to incarceration or institutionalization" Id. at 635 (citing Deshaney, 489 U.S. at 200), so too we find that the proposed amended complaint does not allege an affirmative act that restrained Ivan's personal liberty similar to incarceration or institutionalization. The Third Circuit in Ye explained that if it were to hold that the fourth element of the state-created danger doctrine was satisfied, then the court would "take the state-created danger doctrine

beyond its precedential and constitutional origins." Id. In a similar manner, we conclude that the amended complaint to be futile because to find a deprivation of liberty similar to incarceration or institutionalization derived from the facts alleged would be stretching a narrow exception—the state-created danger doctrine—beyond its clearly established, intended bounds.

The plaintiff in a conclusory manner alleges that Wolfe deprived Ivan Vorobyev of his liberty, stating that "Wolfe acted in willful disregard of the safety of Ivan Vorobyev when she: . . . (s) *Deprived Ivan Vorobyev of his liberty* to go to an emergency department by misleading him about the seriousness of his symptoms and by sending him to his dormitory." (Doc. 36, ¶ 60(s)) (emphasis added). The plaintiff further argues that "[t]he misdiagnosis and inappropriate medicines thus did more than merely misdiagnosis Ivan: they affirmatively caused *his fatal decisions* not to go to an emergency department and to follow Defendant Wolfe's instructions by returning to his dormitory." (Doc. 36, at 17) (emphasis added). In our view, to hold that the defendant's inaction caused the plaintiff to make a decision not to seek emergency care would extend the doctrine beyond the factual scenarios it was intended capture. See Ye, 484 F.3d at 635.

Viewing the facts alleged in the amended complaint in a light most favorable to the plaintiff, we find that the plaintiff has not set forth sufficient facts to establish an "affirmative act—a 'restraint of personal liberty' similar to incarceration or

institutionalization." Id. at 635 (citing Deshaney, 489 U.S. at 200). Accordingly, we find that the proposed amended complaint the plaintiff fails to establish a substantive due process claim upon which relief can be granted and therefore granting leave to amend would be futile.

## 2.   **The Defendant is Entitled to Qualified Immunity**[3]

In any event, even if we determined that the plaintiff had stated a colorable constitutional claim, we believe that the defendant would still be entitled to qualified immunity from damages as to the federal claim.

The doctrine of qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law,

---

[3] We note that in proper cases the court may consider the question of qualified immunity *sua sponte*. See Doe v. Delie, 257 F.3d 309, 312 (3d Cir. 2001).

qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. Giles v. Kearney, 571 F.3d 318, 325-26 (3d Cir. 2009).

Qualified immunity shields officials from liability for civil damages brought pursuant to section 1983 "so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). The official seeking qualified immunity has the burden of establishing their entitlement to the affirmative defense. Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014) (citing Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir. 2010)). To determine whether an official is entitled to the affirmative defense of qualified immunity for a section 1983 claim, a court must determine (1) whether the official violated a constitutional right and, if so, (2) whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first).

A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." Mullenix, 577 U.S. at 11. To be clearly established, there does not have to be a case that is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." Id. (quoting Ashcroft v. Al-Kidd, 563 U.S. 731, 741 (2011)). In determining whether a right is clearly established, courts must not define the right "at a high level of generality." Id. (quoting Al-Kidd, 563 U.S. at 742, 131 S.Ct. 2074.) Rather, the analysis should focus on "whether the violative nature of particular conduct is clearly established." Id. (quoting Al-Kidd, 563 U.S. at 742). On this score, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. It is the plaintiff who bears the initial burden of demonstrating that the constitutional right at issue was clearly established at the time of the claimed violation. See Davis v. Scherer, 468 U.S. 183, 197 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue."); Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) ("Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears

the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right.").

To determine whether a right is clearly established, the court may look to cases from the Supreme Court, controlling circuit precedent, or "a robust consensus of cases of persuasive authority" from other circuit courts. Porter v. Pa. Dep't of Corrs., 974 F.3d 431, 449 (3d Cir. 2020) (quoting Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017)). Unpublished cases cannot establish a right because they do not constitute binding authority. El v. City of Pittsburgh, 975 F.3d 327, 340 (3d Cir. 2020). In rare cases, the unlawfulness of a government official's conduct may be established from the obviously unlawful nature of the defendant's conduct "even though existing precedent does not address similar circumstances." Wesby, 138 S. Ct. at 590 (citing Brosseau v. Haugen, 543 U.S. 194, 199 (2004)).

In the instant case, based on our analysis of the plaintiff's Due Process claim, we conclude that Wolfe would be entitled to qualified immunity because the law was not clearly established at the time of Wolfe's alleged misdiagnosis of Ivan Vorobyev's symptoms. See Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L. Ed. 2d 272 (2001). The Third Circuit case most similar to the factual scenario before us is Ye v. United States, 484 F.3d 634 (3d Cir. 2007). As evidenced by Judge Rendell highlighting the nuanced difference between a mere assurance and a

misdiagnosis, we conclude that the caselaw would not have made it sufficiently clear that Wolfe's conduct, even if viewed as an affirmative act, would violate another person's constitutional rights by depriving that person of their liberty. Indeed, the uncertainty of the law in this area is underscored by the prior court of appeals decision in this case. While Judge Rendell's concurrence describes a subtly nuanced way in which the circuit's prior published decision in <u>Ye</u> could be distinguished, the panel majority held that "[i]f an affirmative assurance of well-being cannot constitute a deprivation, then misdiagnosis—the conduct at issue here—cannot either," and concluded that "the complaint did not allege a valid state-created danger claim." <u>Vorobyev</u>, 2022 WL 1499278, at *2 and *3. Given that this nuanced view of the state created doctrine could not command a majority of the original panel in this case, it simply cannot be said that the law was so clear that Nurse Wolfe would have known that her alleged errors transgressed the plaintiff's clearly established constitutional rights. Accordingly, we find that even if the plaintiff had sufficiently alleged a state-created danger claim, defendant Wolfe is entitled to qualified immunity.

Finally, the plaintiff has asserted various state law claims against Wolfe. We note that the disposition of the plaintiff's federal legal claim, in turn, suggests the appropriate course for the court to follow in addressing any ancillary state law claims that the plaintiff may wish to pursue against this defendant. In a case such as this,

where the jurisdiction of the federal court was premised on an alleged federal claim that is found to be subject to dismissal, the proper course generally is for "the court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if- ... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims)." Bronson v. White, No. 05-2150, 2007 WL 3033865, *13 (M.D. Pa. Oct. 15, 2007) (Caputo, J.) (adopting report and recommendation dismissing ancillary malpractice claim against dentist); see Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008) (citing United Mine Workers, 383 U.S. at 726, 86 S.Ct. 1130 and Tully v. Mott Supermkts., Inc., 540 F.2d 187, 196 (3d Cir. 1976).) ("Because the District Court appropriately dismissed [the inmate's] Bivens claims, no independent basis for federal jurisdiction remains"). As the Supreme Court has aptly observed:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers, 383 U.S. at 726, 86 S.Ct. 1130 (footnotes omitted).

After engaging in a futility analysis regarding whether the plaintiff should be granted leave to amend his complaint, we have found that the plaintiff's federal claim is subject to dismissal. Therefore, in the exercise of our discretion in this district, we should decline to assert supplemental jurisdiction over potential ancillary state law claims in this case where the only potential federal claim brought before us failed as a matter of law. Accordingly, these pendent state law claims will be dismissed without prejudice.

## IV.   <u>Conclusion</u>

For the foregoing reasons, we conclude that the plaintiff's motion to amend (Doc. 35) will be DENIED, and the plaintiff's complaint will be dismissed.

An appropriate order follows.


<u>s/ Martin C. Carlson</u>
Martin C. Carlson
United States Magistrate Judge